## JOHN E. NICHOLS *vs.* MARK A. DEWOLF.

The custom of merchants will not bind a person acting in a different character.

Proof of usage at one port cannot be taken to affect the dealings of parties at another.

The captain of a vessel cannot bind the owner by signing bills of lading, unless he is clothed with express authority for that purpose, or authority implied by the usual course of employment or a subsequent assent.

Proof of a practice of the captain to sign bills of lading for articles deliverable at one port, is no proof of authority to sign bills of lading for a different port.

The power of a consignee to bind the owner extends only to such acts as are within the object of the consignment.

THE declaration was in assumpsit. It appeared in evidence that the defendant, a resident of Bristol and an owner of a plantation in Cuba, employed his brig, the Neptune, to ply between Bristol and Mantanzas, for the purpose of carrying out supplies to his plantation and returning to bring home its produce. On the 4th of May, 1844, Noyes & Jenks, the defendant's agents for the pur-

poses for which the brig was employed, shipped on board eight thousand cigars, to be delivered to the plaintiff at Providence, and gave a bill of lading signed by the captain, by which he undertook to convey the cigars safely to the plaintiff, " the acts of God or public enemies only excepted." Upon the arrival of the brig at Bristol, her port of destination, her hands were discharged, and she was committed to the custody of the custom house officers. While she was lying at the wharf in this custody, locked up, she was broken open in the night time and the cigars were stolen therefrom. The defendant proved that this was the ordinary mode of leaving vessels at that port, and that it was unusual to leave a watch on board. The defendant rests his defence upon the ground that he was, at any rate, only liable for want of ordinary diligence, which was not proved ; and, secondly, that in making this contract the captain was not acting within the scope of his authority. The plaintiff offered as proof of the captain's authority to show that upon this very voyage the captain had brought a consignment of molasses for gentlemen residing in Providence, which the court admitted, on condition that it should be followed up by proof of other similar acts, brought home to the knowledge of the defendant. This the plaintiff proved accordingly, and that the defendant received freight for it. He further proved, that the defendant's agent, resident at Bristol, knew that the captain was in the habit of carrying small packages to and from Bristol and Matanzas, but failed to show that he accounted to the defendant for the freight or had received any authority for that purpose. He likewise offered to show a usage of vessels, voyaging between Providence and Cuba, to take at the discretion of the captain, small consignments of goods in addition to their

John E. Nichols *vs.* Mark A. DeWolf.

regular cargo ; but the court ruled that the evidence was inadmissible on two grounds. 1st, It was a custom of merchants, and the defendant was not known in that character, but on the contrary, was a planter ; and, 2d, that no proof of usage at Providence could be taken to affect the dealings of parties at Bristol. It was proved that the Neptune cleared on this voyage from Matanzas for Providence, but this fact was explained by evidence of clearing for a port beyond the port for which the vessel was destined, for the defendant's convenience, in case he should wish to send her to a more distant port. .

TILLINGHAST & BRADLEY, for the plaintiff.

BLAKE, for the defendant.

GREENE, Chief Justice, charged the jury.

This is an action of assumpsit upon a bill of lading, for eight thousand cigars received at Matanzas on board the brig Neptune, to be delivered at the port of Providence, the defendant being the owner of the Neptune. The declaration is against the owner as a special bailee, not as a common carrier. The bill of lading, upon which it is founded, was signed by the captain of the vessel, and this makes it important to consider the captain's authority to bind the owner. The simple fact that he is the captain, does not clothe him with the authority to bind the owner by signing a bill of lading for goods received on freight. He may have it either by express delegation or it may be implied from the usual employment of the vessel. The captain of a vessel engaged in the freighting business, who is in the habit of receiving goods for hire and signing bills of lading, has authority to bind the owner as much as if the authority were expressly given. The owner cannot reap the benefit of the captain's contracts

without likewise being liable for the losses, if the contracts are made within the scope of the captain's agency. But there are various kinds of voyages. A man may send his vessel to procure a cargo on his own account, and in such cases the master has no power to take freight; or he may send his vessel to get freight, and then the very business is to procure goods on freight and sign bills of lading, and the signature binds the owner. The vessel may be employed in both ways. She may be sent to procure goods on account of the owner, and if she be not fully laden on owner's account, to fill up with goods upon freight. By such incidental contracts for freight the owner is bound. Did the defendant's vessel sustain this two-fold character. The bill of lading is not in and of itself evidence against the defendant. To bind the owner, the captain must have signed by express authority or by authority implied from the usual employment of the vessel or by a subsequent assent. The question in this case is, whether such an authority can be inferred from the usual employment of the vessel. If the captain was in the habit of taking goods on freight and of signing bills of lading, and the defendant knew this, the defendant ought not to be allowed to deny the captain's authority. And this authority cannot be inferred from one or two or three instances of such dealing; but a sufficient number of such instances must be shown to prove that in the sense of the law this was the usual employment of the vessel. If the captain, upon his own risk, was in the habit of taking small packages or boxes without giving bills of lading, the owner is not bound. This is not unfrequently done by stage drivers and captains of steamboats, who take small packages and receive the freight or compensation for carrying, without any liabili-

John E. Nichols *vs.* Mark A. DeWolf.

ty on the part of the steamboat or stage company. The jury will examine the evidence, to see what has been the employment of the vessel and the usage of the captain in these particulars.

There is another fact important to be proved by the plaintiff in connexion with this part of the case. The bill of lading in this case stipulates for the delivery of the cigars at the port of Providence. The plaintiff therefore must prove that the usual employment of the vessel had been for the captain to sign bills of lading for the delivery of such articles at the port of Providence. If a practice of the captain had been proved to sign bills of lading for articles deliverable at Bristol, this would confer no authority to sign bills of lading for Providence.

The goods were shipped by Noyes & Jenks, the consignees of the defendant at the port of Matanzas. The plaintiff's counsel contends Noyes & Jenks had authority to take the cigars on freight. The authority of the consignee to bind the owner extends only to such acts as are within the object of the consignment. Any contract or shipment made in the course of the business for which he is consignee, binds the owner. But a consignee, authorized to procure a return cargo on the owner's account, has no authority to procure freight ; and so conversely. Consignees may act in both capacities. The question here is, what was the authority of Noyes & Jenks ? If their business was simply to ship the return cargoes, they had no authority to procure freight ; but if their business was partly to procure freight, the defendant is bound by their acts. The authority of Noyes & Jenks must be to ship the cigars on freight, to the port of Providence. If you find the defendant liable, the next question is as to the extent of the liability. There are two

kinds of carriers. First, common carriers, whose business is to carry for hire such freight as is offered. These are responsible for all losses unless occasioned by the "act of God or public enemies." There are carriers who act upon a special contract. The latter class are only bound for usual and ordinary care. Ordinary care is such care as prudent men ordinarily take in their own business. It is for you to consider whether in this case the captain used ordinary care; whether prudent men, on the arrival of a vessel in the port of Bristol, would or would not have left her as this brig was left by the captain. And if you think the captain had authority to bind the owner and did not use ordinary diligence you must find for the plaintiff. But if you think the captain had no such authority, or, having such authority, used ordinary care, you will find a verdict for the defendant.

Verdict for the plaintiff.